HELMBOLD (WHEELER v.).  See Case No. 17,496.

HELMS (SWEETSER v.).  See Case No. 13,-689.

HELMSLEY (COGGINS v.).  See Case No. 14,109.

HELRIGGLE (UNITED STATES v.).  See Case No. 15,344.

## Case No. 6,345.

### The HELVETIA.

[6 Ben. 51.] [1]

District Court, S. D. New York. April, 1872.

CUSTOMS DUTIES—PENALTY—GOODS NOT ON MANIFEST.

A steamship arrived in the port of New York from England. Certain articles subject to duty were found on board of her after her arrival, concealed in the purser's room and in the ship's storeroom, which had been brought in her from England, and which were not entered on the ship's manifest. The master of the vessel testified that he made up the manifest; that he had no knowledge or information, at any time, that the goods were in the vessel; and that he took all precautions in his power to prevent smuggling. A libel was filed against the ship and the master to recover the value of the goods, but the suit was discontinued against the master: Held, that, under the 23d and 24th sections of the act of March 2, 1799 (1 Stat. 644), and the 8th section of the act of July 18, 1866 (14 Stat. 180), the vessel had incurred a penalty to the amount of the value of the goods, which could be enforced against the vessel, even though it had not been enforced against the master; and that the facts stated by the master did not bring the case within the proviso in the 24th section of the act of 1799.

[Cited in The Sidonian, 38 Fed. 442.]

In admiralty.

H. E. Davies, Jr., Asst. Dist. Atty., for United States.

C. Donohue and J. Chetwood, for claimants.

BLATCHFORD, District Judge. The libel, in this case, is brought by the United States, and alleges that the steamship Helvetia, within this district, and on waters navigable from the sea by vessels of ten or more tons burden, was seized by the collector of the port of New York, for breach of the revenue laws of the United States, and that this suit is brought against the said vessel and against Archibald Thomson, her master, in a cause of forfeiture, on the ground that, on the fifteenth of November, 1869, at the port of New York, certain goods, wares and merchandise, which are enumerated, of the value of $654 92, were imported and brought into the United States in said vessel, of which said Thomson was master, from a foreign port or place, and were not included in the manifest on board, as required by the 23d section of the act of March 2, 1799 (1 Stat. 644), contrary to the 24th section of said act, whereby said master forfeited and became liable to pay to the United States the said sum of $654 92, as the value of said goods; and that, by reason thereof, and by force of the 8th section of the act of July 18, 1866 (14 Stat. 180), said vessel became holden for the payment of said penalty against said master, and became liable to be seized and proceeded against summarily, by libel, to recover the same, in this court. The libel prays for a decree for said forfeiture against Thomson and

[1] [Reported by Robert D. Benedict, Esq., and here reprinted by permission.]

against the vessel, for said sum of $654 92, as a lien thereon, and that the vessel be condemned for the same and sold to satisfy said lien.

The answer of the claimants of the vessel denies all the statements of the libel, and alleges that the master was not guilty of any fraud or negligence, or other act or omission for which he was liable to the penalty sued for. It also excepts to the libel on the grounds (1), that the libel does not set up or show a cause of action against the steamer; (2) that it does not set up or show a cause of action cognizable in this court; (3) that it does not set up or show that the master or the owners of the vessel, or either of them, has or have been convicted or held liable for any penalty, or that they have evaded service of process, or cannot be served therewith. It also denies the jurisdiction of this court to enforce the penalty in admiralty. The suit has been discontinued as respects the master.

As testimony in the case, there is a written admission that one Chalker "will prove that he was an officer of the United States, that, from information which he received, he searched the steamship Helvetia on the 15th of November, 1869, and found concealed on board of said vessel, in the purser's room, and in the ship's storeroom, in barrels which he was told contained provisions, and which appeared to contain them, and in other places, hidden away and concealed, the articles specified in the list annexed, which are subject to duty under the laws of the United States; that said articles had been brought from England in said steamer by the purser of said steamer, into the United States, concealed as stated; and that neither of the articles in the list was or were entered on the manifest of the vessel, and that the articles in the annexed list are of the value of $654 92, in this market; that said search was made and the said goods seized, and the said vessel also seized, upon waters navigable from the sea by vessels of ten tons and upwards, and within the admiralty and maritime jurisdiction of the United States, and within the Southern district of New York." There is also a written admission that Captain Archibald Thomson "will swear that he was master of the steamship Helvetia, on the voyage in question, that he made up the manifest of the vessel, that the goods in question were not on it, that he had no knowledge or information, at any time, that said goods were on the vessel, and that he took all precautions in his power to prevent smuggling."

The 23d and 24th sections of the act of March 2, 1799 (1 Stat. 645, 646), taken in connection with the 8th and 25th sections of the act of July 18, 1866 (14 Stat. 180, 184), provide, that no goods shall be brought into the United States from any foreign port, in any vessel, unless the master shall have on board a manifest in writing, containing a just and particular account of all the goods laden or taken on board, whether in packages or stowed loose, and that, if any goods shall be imported in any vessel, from any foreign port, without having such a manifest on board, or which shall not be included or described therein, or shall not agree therewith, in every such case the master shall forfeit and pay a sum of money equal to the value of the goods not included in the manifest, and that the vessel shall be holden for the payment of such penalty, and may be seized and proceeded against summarily, by libel, to recover such penalty, in any district court in the United States having jurisdiction of the offence; provided, that, if it shall be made to appear to the satisfaction of the court in which a trial shall be had concerning such forfeiture "that no part of the cargo or such ship or vessel had been unshipped after it was taken on board, except such as shall have been particularly specified and accounted for in the report of the master," and that the manifest was incorrect by mistake, such forfeiture shall not be incurred.

It was held by this court in the case of U. S. v. The Queen [Case No. 16,107], and has been held by the circuit court for the Eastern district of New York, in the case of U. S. v. The Missouri [Id. 15,785], on appeal, that a proceeding in admiralty for the enforcement in this case of the penalty against the vessel is proper. It was also held by this court, in the case of The Queen, that a decree for the penalty could be rendered against the vessel, even though the penalty were not in fact enforced against the master. It was held by the district court for the Eastern district of New York in the case of The Missouri [Id. 9,652], that proceedings against the vessel, under the act, could be taken in the absence of any proceeding against the master or owner, and the circuit court, on appeal, concurred in that view.

The only other point to be considered is, whether the fact that the master "had no knowledge or information at any time that said goods were on the vessel, and that he took all precautions in his power to prevent smuggling," affects what is otherwise a clear right to a recovery on the part of the United States against the vessel. I understand the circuit court, in the case of The Missouri (above cited), to have declined to adopt the proposition that a master can, in all cases, protect himself from the penalty and save the vessel from liability, by proof that he had not actual knowledge that the goods were on board. It says: "The statute makes no qualification. It declares that, if the goods are imported or brought in, and do not appear on the manifest, the forfeiture is incurred." The fact that the proviso to the 24th section of the act of 1799 specifies certain cases in which the forfeiture shall not be incurred, taken in connection with the unqualified language preceding such proviso, is conclusive evidence to my mind that the forfeiture is to be incurred in all cases within such language where the excusatory condi-

tions of the proviso are not complied with. Showing that the master "had no knowledge or information" that the goods were on the vessel, does not tend to make it appear affirmatively, to the satisfaction of the court, that the manifest was "incorrect by mistake," and was not incorrect by negligence, or that the want of knowledge or want of information was not itself negligent or even designed. The statement that the "master took all precautions in his power to prevent smuggling," is very vague. It imports no fact. He may have taken all precautions in his power, and yet have taken no precautions whatever, because disabled from some cause from exercising at the time any power to take precautions. The goods were found concealed in barrels which appeared to contain provisions, "and in other places." They consisted of silk in pieces, shawls, opera cloaks, silk umbrellas and other dry goods. It would seem that, if a searching officer found the goods, the master of the vessel ought to be able to show some better reason for not knowing or being informed that the goods were in the places where they were found, than merely that he had no such knowledge or information, and the general statement that he took all precautions in his power to prevent smuggling, if it is desired that the court shall be satisfied affirmatively that the manifest was "incorrect by mistake." But, further, there is no compliance with the other part of the proviso, by making it appear that no part of the cargo of the vessel was unshipped, after it was taken on board, except such as was particularly specified and accounted for in the report of the master.

There must be a decree against the vessel for the $654 92, with costs.